## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## Civil Case No. 1:10-cv-00260-MR
## [Criminal Case No. 1:08-cr-00025-MR-1]

| | | |
|---|---|---|
| CARROL LEE OWENS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on consideration of the Petitioner's Motion to Vacate, Set Aside or Correct Sentence, filed pursuant to 28 U.S.C. § 2255 [Doc. 1]; the cross-Motions for Summary Judgment filed by the Respondent and Petitioner [Docs. 7, 13]; and Petitioner's "Motion for an Expeditious Ruling" [Doc. 16].  For the reasons that follow, Respondent's motion for summary judgment will be granted, Petitioner's motion for summary judgment and motion for an expeditious ruling will be denied, and Petitioner's Section 2255 motion will be denied and dismissed.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On April 25, 2008, Petitioner was charged in an eight-count Superseding Bill of Indictment relating to a conspiracy to break into vehicles in the Pisgah National Forest and steal financial cards and

personal information. Specifically, Petitioner was charged in Count 8 with executing a scheme to defraud a financial institution, the deposits of which were federally insured, by using a VISA credit card — that was stolen from an individual identified by the initials, A.S. — in order to obtain property from Wal-Mart, all in violation of 18 U.S.C. §§ 1344 and 2. Petitioner was charged in Count 9 with knowingly and without lawful authority using the name and VISA Card account number of another person during and in relation to a felony violation as enumerated in 18 U.S.C. § 1028A(c). [Criminal Case No. 1:08-cr-00025-MR, Doc. 13: Superseding Bill of Indictment].

Petitioner made his first appearance on the charges on March 3, 2008, and Fredilyn Sison of the Federal Defenders of Western North Carolina was appointed as counsel. On April 14, 2008, Ms. Sison filed a motion to withdraw as counsel on the ground that Petitioner had decided that he wished to proceed *pro se*. Ms. Sison asserted that Petitioner had proceeded *pro se* in other criminal matters and that he contended that he would be prepared to try the criminal case as scheduled on May 12. Petitioner also informed the Assistant United States Attorney (AUSA), Corey Ellis, of his desire to proceed *pro se*. Mr. Ellis informed Petitioner and Ms. Sison that he had a conflict with the May 12 trial date because of a

previously scheduled trial which he was prosecuting, and that if the case was not resolved prior to May 12 then another United States attorney may be assigned to Petitioner's case. [Id., Doc. 9: Motion to Withdraw].

On April 16, the Magistrate Judge conducted a hearing on the motion to withdraw. Ms. Sison informed the Court that there was no conflict between herself and Petitioner which had prevented effective communication; rather, Ms. Sison advised that she filed the motion to withdraw because she believed that Petitioner expressed a sincere desire to represent himself. The Court engaged in an extensive inquiry with Petitioner on the potential perils of self-representation including advising Petitioner that a trained attorney could likely provide a stronger defense and better advise him of the potential penalties that he faced. The Court also explored Petitioner's educational background and his experience in criminal matters. After being so advised, Petitioner stated that it was still his desire to represent himself. After this inquiry, the Court found that Petitioner's decision to waive his right to counsel was knowing and voluntary, as was his decision to represent himself, and the motion to withdraw was therefore allowed. Ms. Sison was appointed as standby counsel and the Court ordered that Petitioner be provided with copies of the discovery in his case and with copies of the Federal Rules of Criminal

Procedure and Evidence. [Id., Doc. 11: Order to Withdraw, filed April 22, 2008].

On April 25, 2008, the Government filed the superseding indictment discussed above, and Petitioner's arraignment on the new charges was scheduled for May 5. [See id., Minute Entry, April 29, 2008]. On April 29, the Government filed a notice of substitution of counsel; Mr. Ellis was removed from the case due to prior commitments for another trial, and AUSA Kenneth Smith assumed responsibility for the Government in Petitioner's case. [Id., Doc. 15: Notice of Substitution of Counsel].

On or about May 1, 2008, while proceeding *pro se*, Petitioner signed and mailed a motion to suppress evidence to the Clerk. The motion sought to suppress evidence of property that was seized by the Henderson County Sheriff's Department from a home occupied by Gail Owens, and to suppress statements made by Ms. Owens to detectives. Petitioner argued that the detectives pressured Ms. Owens into providing consent to search the home and into writing a statement. Although Petitioner declared no property interest in the home,[1] he nevertheless argued that Ms. Owens, as a houseguest, did not have authority to consent to a search of the home.

_____

[1] In fact, Petitioner admitted that the home was owned by a woman named Ruth Chapman.

[Id., Doc. 23: Motion to Suppress]. The motion to suppress was signed on May 1st, but it was not received and filed by the Clerk until May 6th.

On May 5, Petitioner appeared before the Court with Raquel Wilson of the Federal Defenders of Western North Carolina for his arraignment on the superseding indictment. Ms. Wilson explained that she was appearing on behalf of Ms. Sison as standby counsel and informed the Court that the parties may have reached a plea agreement with the Government. Ms. Wilson stated that prior to this hearing, she had met with Petitioner and, recognizing Petitioner was *pro se*, inquired whether he now desired counsel to assist him in negotiating the terms of the plea agreement, and Petitioner confirmed that he would rather have counsel for the negotiations. [Id., Doc. 66: Rule 11 Tr. at 4]. The Court asked Petitioner if he wanted Ms. Wilson appointed to represent him and he stated that he wanted the Federal Defenders to represent him "[i]n the matter of the plea agreement." [Id. at 5]. The Court explained that Petitioner could not have counsel represent him on a piecemeal basis, and that Petitioner would have to decide whether he wished to continue *pro se* or to have counsel appointed. Petitioner affirmed to the Court that he chose representation and Ms. Wilson was formally appointed as counsel of record. [Id.].

Petitioner, through counsel, agreed to sign a waiver of his right to arraignment on the Superseding Bill of Indictment. [Id., Doc. 20: Waiver of Arraignment]. In this waiver, Petitioner entered pleas of not guilty, and he did not request a jury trial. The Court then recessed and took up other matters. In the meantime, Petitioner and counsel continued the plea negotiations and when the Court reconvened Petitioner's counsel stated that Petitioner had entered into a written plea agreement with the Government, and that he was prepared to enter pleas of guilty to Counts 8 and 9 of the superseding indictment.

The Court proceeded with the Rule 11 hearing and Petitioner was placed under oath. The Court carefully explained the elements of Counts 8 and 9, including the minimum and maximum penalties if convicted. Petitioner was informed that he had the right to plead not guilty and proceed to trial where the Government would have the burden of proving each element of the charged offenses before a jury and beyond a reasonable doubt. In addition, Petitioner was informed that he would have the right to put on a defense, including calling witnesses and confronting the Government's witnesses on cross-examination.

The Government summarized important terms of the written plea agreement, including important waiver provisions relating to Petitioner's

ability to appeal his criminal judgment or contest it through a collateral proceeding. In particular, the agreement provided:

> Defendant, in exchange for the concessions made by the United States in this plea agreement, waives all such rights to contest the conviction and/or the sentence except for: (1) claims of ineffective assistance of counsel and/or (2) prosecutorial misconduct.

[Id., Doc. 19: Plea Agreement ¶ 17].

Petitioner confirmed that his plea was voluntary and not the result of any coercion, threats, or promises in any way; that he had met with his defense attorney and had an opportunity to discuss any possible defenses to the charges; that he believed he understood how the sentencing guidelines might apply to him; and that he was entirely satisfied with the services of his attorney. [Id., Doc. 66: Rule 11 Tr. at 26].

The Court's questions, along with Petitioner's answers to them, were recorded and presented to Petitioner in writing to review. Petitioner reviewed the document in open court and signed it. Thereafter, the Court accepted Petitioner's guilty plea after finding that it was both knowing and voluntary. [Id., Doc. 21: Acceptance and Entry of Guilty Plea].

On May 27, the Court entered an Order denying Petitioner's motion to suppress as moot. The Court explained that Petitioner had signed and mailed his motion to suppress on May 1, while proceeding *pro se*, but

noted that Petitioner later elected to have counsel represent him in his case on May 5, and he later entered into his written plea agreement and his pleas of guilty were accepted.  [Id., Doc. 24: Order on Motion to Suppress].

On October 7, Petitioner signed and mailed two motions to the Court: a motion to withdraw his guilty plea, and motion to proceed *pro se*.  In the first motion Petitioner raised three claims.  The first claim was for ineffective assistance of counsel.  Petitioner argued that his counsel was not representing his best interest or following through with agreements about the best way to proceed with his case.  The second claim involved prosecutorial misconduct: Petitioner contended that he had suffered "extreme prejudice because of previous history and they cannot decide who wants to be the prosecutor in [Petitioner's] case by switching back and forth."  [Id., Doc. 31: Motion to Withdraw Guilty Plea at 1]. In his final claim, Petitioner argued that there were "technical errors" because the evidence does not support his conviction and therefore the plea agreement was "unconstitutional on the face of the law."  [Id.]

In his motion to proceed *pro se*, Petitioner stated that he had "opted" to represent himself and he asked that his court-appointed counsel be removed "due to misrepresentation."  [Id., Doc. 30].  These motions were filed with the Clerk on October 9.  The following day Petitioner's counsel

filed a motion to withdraw, asserting that based on Petitioner's charges of alleged misconduct on her part, "a working and workable attorney-client relationship no longer exists." [Id., Doc. 31: Motion to Withdraw at 1-2].

On October 29, Petitioner appeared with counsel for his sentencing hearing. The Court, however, first addressed counsel's motion to withdraw. Ms. Sison reviewed the history of representation in the case noting Petitioner's decision to proceed *pro se* in April 2008, with Ms. Sison appointed to serve as standby counsel. Ms. Sison explained that Mr. Ellis had been representing the Government in the case, but he had to be replaced by Mr. Smith due to Mr. Ellis' participation in another trial. Sometime after Mr. Smith entered the case, Petitioner expressed a desire for a plea agreement which the Government drafted and Petitioner accepted. For the purpose of Petitioner's May 5 hearing, Ms. Sison explained that Ms. Wilson agreed, with Petitioner's consent, to appear for Ms. Sison. [Id., Doc. 67: Sentencing Tr. at 3]. Ms. Sison resumed exclusive representation of Petitioner following the entry of his guilty pleas.

Ms. Sison noted that when she received a copy of the draft of the PSR she shared it with Petitioner and they discussed possible objections. Ms. Sison found none and noted this in a filing with the Court. [Id., Doc. 26].

Petitioner disagreed with this assessment and he asked Ms. Sison to file a motion to withdraw from further representation.

The Court heard from Petitioner who confirmed that he appeared before Judge Howell for his Rule 11 hearing, that he was under oath. represented by counsel and that all of the answers that he had given during the hearing were true. Petitioner admitted that at the time he entered his pleas of guilty to Counts 8 and 9 he believed that he was guilty of those crimes. Petitioner explained, though, that subsequent research had convinced him that he was not guilty of the charges. The Court addressed Petitioner:

> You certainly have not explained to me why you are not guilty of the crime of which you are charged and, if you were not guilty, why you pled guilty to it under the terms of the plea agreement and then told Judge Howell under oath that you understood exactly what you were doing and what the elements of the offense were and that you understood all of that. . . .
>
> The plea agreement in this case is written, signed by the defendant and his attorney and the U.S. Assistant Attorney. The defendant is well educated, knew and understood what he was doing on both occasions, and has failed to show a fair and just reason for withdrawing his solemn oath of the plea agreement and the Rule 11 inquiry in the manner made by his solemn oath before Judge Howell.

[Id., Sentencing Tr. at 8-10]. The Court thus denied Petitioner's motion to withdraw his guilty plea.

The Court then turned to Petitioner's motion to proceed *pro se.* The Court found that Petitioner had previously represented himself in a criminal case and that he understood the potential penalties he faced at sentencing. The Court found that Petitioner would likely be better served with counsel, but noted that Petitioner had a right to represent himself. Petitioner's motion was allowed after the Court found that the decision to proceed *pro se* was knowing and voluntary. [Id. at 11]. Petitioner was informed that he could file objections to the presentence report (PSR), and his sentencing hearing was continued to November 20, 2008.

On November 3, Petitioner filed a notice of appeal from the Court's Order denying his motion to withdraw his guilty plea. [Id., Doc. 34]. Petitioner also filed several *pro se* motions including a motion to dismiss a defective indictment, motion to strike surplusage, and a motion to vacate his plea agreement. [Id., Docs. 35, 39, and 40]. These motions were promptly denied by the Court. [Id., Docs. 41 and 42]. Petitioner filed a notice of appeal from the Court's Order denying his motion to dismiss a defective indictment. [Id., Doc. 49: Notice of Appeal].

On November 4, 2008, Petitioner filed objections to the PSR. Among other objections, Petitioner renewed his attack on the voluntariness of his guilty pleas contending that his counsel never explained that he was entering pleas to bank fraud and aggravated identify theft. Petitioner again argued that he should be entitled to withdraw his guilty pleas. Petitioner also raised the issue of prosecutorial misconduct arguing that the Government erred in charging him with bank fraud and aggravated identity theft. [Id., Doc. 38].

On November 7, 2008, Petitioner filed a motion to appoint counsel arguing that counsel was needed because of his lack of access to a law library and his lack of ability to represent himself. In the alternative, Petitioner moved for the appointment of standby counsel. [Id., Doc. 43]. On November 14, the Court entered an Order denying the motion for counsel. The Court noted that Petitioner had already been appointed counsel on two occasions, and had moved to discharge each attorney and proceed *pro se*. The Court found that Petitioner had refused to cooperate with his sentencing counsel and that absent a good faith showing by Petitioner that he would now cooperate with counsel there would be no benefit to the appointment of counsel. [Id., Doc. 48].

On November 20, 2008, Petitioner appeared *pro se* for his sentencing hearing, and AUSA Jill Rose appeared for the Government. Petitioner stated that he did not wish to be heard on his written objections and with regard to punishment, Petitioner opined, "Not by might, nor by power, but my Spirit, saith the Lord of hosts. I do not consent to any aspect of thee. Let God be true, his will be done, and all in peace." [Id., Doc. 68: Sentencing Tr. at 2-3]. The Government observed Petitioner's lengthy criminal history, which covered nearly 15 pages of his PSR, and noted that Petitioner's criminal history far exceeded the threshold required for a criminal history category of VI. The Government asked the Court, however, to sentence Petitioner within the applicable guideline range.

The Court reviewed the PSR and noted that Petitioner was 31 years of age and had thus far accumulated 55 criminal history points. The Court addressed Petitioner and expressed an intention to increase his offense level from 5 to 8, resulting in an increased guideline range of 18 to 24 months rather than 9 to 15 months as recommended by the PSR. The Court asked if Petitioner wished to comment on this and Petitioner asked for mercy. The Court sentenced Petitioner was sentenced to 24 months of imprisonment on each count, with the sentences to run consecutively. The

Judgment was filed on November 24, 2008. [Id., Doc. 56: Judgment in a Criminal Case].

Petitioner noted a timely appeal to the United States Court of Appeals for the Fourth Circuit. On appeal, Petitioner, through counsel, argued that Petitioner's waiver of counsel was not knowing and voluntary and that this Court erred in denying his motion to substitute counsel. The Court rejected these claims for relief and next turned to the issues raised in Petitioner's *pro se* supplemental briefs. Petitioner argued that the Court erred in (1) denying his motion to withdraw his plea agreement; (2) erred in denying his motion to dismiss the indictment; and (3) erred in denying his motion to strike surplusage. The Court likewise rejected these arguments and affirmed his criminal judgment.[2] United States v. Owens, 356 F. App'x 468 (4th Cir. 2009) (unpublished).[3]

Petitioner filed a timely motion to vacate, pursuant to 28 U.S.C. § 2255, and raised a host of claims, and later raised two additional claims in a motion to amend.[4] Construed liberally, it appears that Petitioner has

---

[2] The Fourth Circuit consolidated with his direct appeal Petitioner's appeals from the Court's orders denying his motions to withdraw his guilty plea, to dismiss his indictment, and to strike surplusage from the indictment.

[3] This case was assigned to the undersigned following Judge Thornburg's retirement and after the conclusion of Petitioner's direct review on appeal.

[4] Petitioner's motion to amend [Doc. 3] was previously allowed. [Doc. 15].

identified 15 grounds which he contends entitle him to relief in this collateral proceeding. In Grounds 1, 4, and 9 of his initial § 2255 motion, Petitioner revives claims of prosecutorial misconduct. In Grounds 3 and 6 Petitioner raises claims of ineffective assistance of counsel. Through Grounds 2 and 5 of the initial motion and in Ground 1 of his amended motion, Petitioner raises various challenges to his indictment and the Government's decision to charge him. In Grounds 8, 10, 11, 12, and 13 of his initial motion, and Ground 2 from his amended motion, Petitioner contends that the trial court committed various sentencing errors. In Ground 7 Petitioner renews his attack on the voluntary nature of his guilty plea. [Docs. 1 and 3].

## II.  STANDARD OF REVIEW

### A.    Section 2255 Proceeding

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See <u>Raines v. United States</u>, 423 F.2d 526, 529 (4th Cir. 1970).

## B.  Summary Judgment

Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to judgment as a matter of law.  United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991) (applying summary judgment to motion to vacate). Any permissible inferences which are drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). However, when the record taken as a whole could not lead a trier of fact to find for the non-moving party, granting summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

## III.  DISCUSSION

### A.  Prosecutorial Misconduct (Grounds 1, 4 and 9)

In order to establish a claim for prosecutorial misconduct, a petitioner must show (1) that the Government's conduct was improper; and (2) that the conduct prejudiced his substantial rights such that petitioner was deprived of a fair proceeding.  See United States v. Golding, 168 F.3d 700, 702 (4th Cir. 1999).

Petitioner's plea agreement specifically reserved his right to raise a claim of ineffective assistance of counsel, and/or prosecutorial misconduct.

[Criminal Case No. 1:08-cr-00025, Doc. 19: Plea Agreement ¶ 17]. In the supplemental brief filed by Petitioner in his direct appeal, he argued that he should be allowed to withdraw his plea agreement because the Government's attorneys perjured themselves by "knowingly misleading the grand jury to believe that the plaintiff in this motion committed a Bank Fraud by using bank securities to obtain cash, etc." [1:10-cv-00260, Doc. 6-2 at 1]. These claims were among those addressed by the Fourth Circuit when it rejected each of Petitioner's *pro se* claims on appeal. <u>Owens</u>, 358 F. App'x at 469.

In his first ground in the present case, Petitioner argues that AUSA Ellis "vindictively enticed the Grand Jury to hand down [a] True Bill of Indictment based upon fraudulent charges of <u>Bank Fraud</u> (18:1344) and <u>Aggravated I.D. Theft</u> (18:1028A)." [Doc. 1 at 1 (emphasis in original)]. This argument is rejected for at least two reasons. First, it is conclusory and wholly lacking in factual support. Petitioner was not present when his case was presented to the Grand Jury so he cannot know what was said during that hearing and further he presents no evidence that AUSA Ellis acted in a vindictive manner. Second, Petitioner had challenged on direct appeal the sufficiency of the support for the indictment. This claim was rejected. It cannot be resurrected in the form of a claim under 28 U.S.C. §2255. The

fact that it is now presented in the form of prosecutorial misconduct, is of no moment. See United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (holding that the law of the case doctrine "forecloses relitigation of issues expressly or impliedly decided by the appellate court.")(emphasis added). This ground for relief is denied.

In his fourth ground for relief, Petitioner contends that AUSA Smith acted vindictively towards him by seeking a superseding indictment in response to Petitioner's effort to take the charges in the original indictment to trial. Petitioner also contends that as the grand jury sitting in the Asheville Division returned his original indictment, the Charlotte grand jury had no jurisdiction to return a superseding indictment. [Doc. 1 at 2-3]. The Government argues that, despite the lack of merit, Petitioner has procedurally defaulted these claims by failing to raise them on direct appeal. [Id., Doc. 6: Government Br. at 20, 29].

A petitioner may be procedurally barred from presenting a claim in a collateral proceeding if he does not raise it on direct appeal. See Bousley v. United States, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal citations and quotation marks omitted). Petitioner did not raise either of these claims on direct review and the claims are therefore

procedurally barred in a collateral proceeding unless he can demonstrate "cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal to entertain the collateral attack."  United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)).

First, the grand jury in the Charlotte Division had jurisdiction to return the superseding indictment because they, like the Asheville Division, are located within the Western District of North Carolina. See United States v. Harman, 349 F.2d 316, 319 (4th Cir. 1965) (rejecting similar claim) (citing Salinger v. Loisel, 265 U.S. 224 (1924)).

Second, Petitioner's allegations of vindictiveness without any evidentiary support in no way constitute "cause" or "prejudice", and he cannot make a reasonable claim that he is actually innocent to clear the estimable bar to presenting a claim for the first time on collateral review. See Bousley, 523 U.S. at 622 (finding that a petitioner may escape procedural bar by demonstrating actual innocence). This ground for relief will be denied.

In his ninth ground for relief, Petitioner contends that the Government breached the plea agreement by moving "for a departure outside the

previously agreed upon guideline range." [Doc. 1 at 7]. In his plea agreement, the parties agreed "that the appropriate sentence is one within 'the applicable range' (U.S.S.G. § 5C1.1) and that neither party will seek a departure from that range." [Criminal Case No. 1:08-cr-00025, Doc. 19 ¶ 5(b)]. During his sentencing hearing, the Government noted Petitioner's lengthy criminal history and the offense conduct regarding his instant convictions as detailed in the PSR and then asked the Court to consider a sentence within the range that was set forth in the guidelines. [Id., Doc. 68 at 4]. There was simply no mention of a departure or variance by the Government from the calculated range. This argument will be denied.

## B. Procedurally Defaulted Claims (2, 5, 7, 8, 10, 11, 12, 13)

The Government argues that claims 2, 5, 7, 8, 10, 11, 12, 13 are procedurally defaulted, as it did regarding prosecutorial misconduct in grounds 1, 4, and 9, which were addressed above. Through the claims identified in this section, Petitioner raises claims regarding a challenge to the grand jury process (Ground 2); an argument that the indictment was constructively amended by the return of the superseding indictment (Ground 5); Petitioner did not understand all of the terms of the plea agreement (Ground 7); there were disputed objections which were filed regarding his PSR (Ground 8); the Government and trial court erred in the

application of the guidelines (Ground 10); trial court erred in failing to state the reasons it departed outside the guideline range (Ground 11); trial court erred in imposing a consecutive, two-year sentence on the ground that Petitioner was serving an undischarged term of imprisonment (Ground 12); and trial court erred in conducting an evidentiary hearing outside the presence of Petitioner (Ground 13).

An examination of these arguments demonstrates that each could have been pursued on direct appeal, and therefore had to be pursued on appeal in order to be preserved. In his reply to the Government's motion for summary judgment, Petitioner fails to offer any reasonable explanation which would allow him to escape the procedural bar to these claims on collateral review. Instead, he renews his arguments regarding the sufficiency of the evidence to support a charge of bank fraud, or to the legality of filing a superseding indictment and the grand jury proceedings; the voluntariness of his plea; or the Government's breach of the plea agreement at sentencing; and trial court error at sentencing. [Doc. 11: Reply to Government's Motion for Summary Judgment].

Petitioner's reply does nothing but repeat the arguments which this Court finds are procedurally defaulted due to his unexcused, unexplained failure to raise such arguments on direct appeal. For the foregoing

reasons, the Court finds that the claims for relief in this section are procedurally barred and Petitioner has failed to carry his burden of establishing cause, prejudice or actual innocence.

Moreover, in his plea agreement, Petitioner agreed that he was foreclosed from raising any challenges to his conviction or sentence except for claims of ineffective assistance of counsel or prosecutorial misconduct, and neither of those exceptions apply to these claims. See United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005) ("[A] criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary."). As noted repeatedly, the record is clear that Petitioner's plea of guilty was both knowing and voluntary. These arguments will be denied.

## C. Ineffective assistance of counsel (Grounds 3 and 6)

### 1. Ground 3

In this claim, Petitioner argues that Ms. Sison was ineffective "by refusing to conduct adequate investigations or counsel's failure to move to suppress evidence," consequently, Petitioner contends that he had no choice but to proceed *pro se*. Petitioner further contends that Ms. Sison was ineffective in failing to move for Petitioner's pretrial release from detention. [Doc. 1 at 2].

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. A petitioner seeking post-conviction relief bears a "heavy burden" to overcome this presumption. Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

To demonstrate prejudice in the context of a guilty plea, Petitioner must still satisfy the standard set forth in Strickland. In regard to the second prong, Petitioner must demonstrate that he was prejudiced by ineffective assistance of counsel by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this

burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697, 104 S.Ct. 2052). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

Petitioner offers no evidence to support his claim that any failure to investigate he alleges has prejudiced him under Strickland. Petitioner refers vaguely to "facts that petitioner was asserting to prove his case" but offers nothing further. He offers no explanation of how these facts are even relevant in light of his admissions of guilt, under oath, during his Rule 11 hearing. In sum, Petitioner's conclusory argument fails demonstrate a right to relief under Strikland.

Next, Petitioner argues that counsel was ineffective for failing to file a motion to suppress. To establish deficient performance and prejudice in the context of a failure to file a motion to suppress, a petitioner must demonstrate that such a motion would have been successful. See, e.g.,

<u>United States v. Madewell</u>, 917 F.2d 301, 304 (7th Cir. 1990) (holding that there was no ineffective assistance of counsel because any motion to suppress was unlikely to prevail).  Here, Petitioner does not allege any specific ground on which a suppression motion would have been successful, nor does Petitioner cite any case law that would support the grant of a motion to suppress in his case.  The only evidence of record of what Petitioner may have wanted Ms. Sisson to challenge in the criminal case are the allegations in the motion to suppress that Petitioner actually filed during his days as a *pro se* defendant prior to his guilty plea.

As discussed above, Petitioner served as his own counsel and filed a motion to suppress statements from Ms. Owens and the recovery of evidence from the home of Ms. Chapman.  Petitioner asserted no legal interest in the real property at issue and therefore made no case that he had standing to contest any form of search on Ms. Chapman's property.  Nor did Petitioner offer any evidence other than his self-serving affidavit that Ms. Owens was coerced into making statements to detectives of the Henderson County Sheriff's Department, notwithstanding the fact that Petitioner had no personal knowledge of these events.  Thus it appears that any motion to suppress on these grounds would have been futile and cannot serve to support relief in this proceeding.  It is Petitioner's burden to

establish he is entitled to relief and he has failed to carry his burden. This argument will be overruled.

Last, Petitioner contends that he suffered prejudice because his counsel failed to challenge his pretrial detention. Again, Petitioner offers no argument as to how he was prejudiced by this omission, and indeed, as Petitioner was in State custody at the time the indictment was filed, and brought to district court on a writ of habeas corpus ad prosequendum, such a motion would appear to have been without merit. Specifically, the writ ordered that Petitioner be produced for his initial appearance in district court on March 3, 2008, and that he immediately be returned to Wayne Correctional Institution in Goldsboro, North Carolina, following the hearing. [See Criminal Case No. 1:08-cr-00025, Doc. 4: Writ]. Accordingly, this argument is overruled.

### 2. Ground 6

Through this argument, Petitioner again attacks the knowing and voluntary nature of his decision to enter into a plea agreement with the Government to resolve the 8 charges pending against him. This time, however, he cloaks the argument in a claim of ineffective assistance of counsel by asserting that he was misled, coerced and threatened into signing the plea agreement by Ms. Wilson.

As has been recounted herein, Petitioner appeared before the Magistrate Judge and was placed under oath for his Rule 11 hearing. The elements of Count 8 (Bank Fraud) and Count 9 (Aggravated Identity Theft) were read to Petitioner, while he was present with counsel, and Petitioner proclaimed that he understood the elements of each charge and admitted that he was in fact guilty of each charge. Petitioner also stated that no one had promised him or threatened him in any way, and that he had thoroughly discussed his case and any possible defenses with his attorney and that he was entirely satisfied with the services of his attorney.

Petitioner's pleas of guilty were accepted after Judge Howell found that they were knowing and voluntary, and Judge Howell's determination was confirmed by the Court during the hearing on Petitioner's motion to withdraw his plea agreement. Moreover, the Fourth Circuit found no error in the Court's decision to deny his motion to withdraw his plea agreement. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (In a Section 2255 proceeding, a petitioner "will not be allowed to recast, under the guise of a collateral attack, questions fully considered" and decided on direct appeal). Thus, Petitioner's pleas of guilt to Counts 8 and 9 have been conclusively established and may not be relitigated in this proceeding, even under the banner of ineffective assistance of counsel.

### D. Remaining claims

The remaining claims were set out in Petitioner's motion to amend. The first claim, which Petitioner identifies as Ground 14, asserts that his conviction for aggravated identity theft should be set aside because the Government did not prove that he "<u>knew</u> the means of identification he allegedly possessed actually belonged to another person . . ." [Doc. 11: Reply to Government's Motion for Summary Judgment at 11-12]. This is yet another attack on the knowing and voluntary nature of Petitioner's guilty plea, an argument rejected by the trial court and by the Fourth Circuit. It is worth noting that Petitioner's knowing and voluntary plea freed the Government from any obligation to prove the elements of this charge. For the reasons stated herein, the Court finds that this argument is foreclosed by the law of the case doctrine. <u>See</u> <u>Bell</u>, 5 F.3d at 66.

In his final claim (Ground 15), Petitioner, for the first time, argues that the Government lost subject matter jurisdiction because the Magistrate Judge exceeded his authority by accepting guilty pleas instead of referring the matter to the district court with a recommendation to accept the guilty pleas. [Doc. 11 at 12-13]. During his Rule 11 hearing, Petitioner expressly consented to allow the magistrate judge conduct the hearing and to decide whether to accept or reject his guilty pleas. [<u>See, e.g.</u>, Criminal Case No.

1:08-cr-00025, Doc. 21: Acceptance and Entry of Guilty Plea at 1; Doc. 66: Rule 11 Tr. at 10-11].  Moreover, Petitioner's argument that the Magistrate Judge exceeded his statutory authority is simply incorrect.  <u>See</u> <u>United States v. Osborne</u>, 345 F.3d 281, 285 (4th Cir. 2003) (finding that "the Federal Magistrates Act, 28 U.S.C. §§ 631-639 (the "Act") authorizes a magistrate judge to preside over Rule 11 proceedings.").  In addition, this district expressly authorizes and designates magistrate judges "to conduct, take and accept pleas under Fed. R. Crim. P. 11."  LCrR 57.1(A)(9).  This argument is denied.

## IV.    CONCLUSION

Based on the foregoing, the Court finds that Petitioner's § 2255 motion, as amended, is without merit and it will be denied and dismissed.

Further, pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must

establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1.    Respondent's motion for summary judgment [Doc. 7] is **GRANTED**;

2.    Petitioner's motion for summary judgment [Doc. 13] is **DENIED**;

3.    Petitioner's motion for an expeditious ruling [Doc. 16] is **DENIED** as moot; and

4.    Petitioner's motion to vacate, set aside or correct sentence, as amended [Docs. 1, 3] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: January 20, 2014

Martin Reidinger
United States District Judge